Nicholas M. Pette, J.
Plaintiff in this action seeks a declaratory judgment adjudicating that defendant, Fidelity & Casualty Company of New York (hereinafter: Fidelity), is obligated to undertake the defense of William Moore in an action for personal injuries brought by one August Becker, in the Supreme Court, Nassau County, against D & D Truck Rental Corp. (here *1013 inafter: D & D) and William Moore, and that the defendant Fidelity is obligated to pay the amount of any judgment rendered against William Moore in said personal injury action, up to the limit of liability insurance policy issued by defendant Fidelity to said William Moore’s employer, S & W Sales Co., Inc. (hereinafter: S & W), as the named insured.
It appears that said William Moore is presently represented in said Becker’s action by Cosmopolitan Mutual Insurance Company (hereinafter: Cosmopolitan), with Henry Wolf man as Moore’s attorney of record.
Fidelity’s. alleged defense to the action at bar is (1) that Moore is being covered under the automobile policy issued by Cosmopolitan to D & D and that through Cosmopolitan’s officer, Henry Wolf man, Moore is being furnished with a defense in the Becker action; (2) that Cosmopolitan has caused the action at bar to be brought in the name of Moore on its own behalf and (3) that defendant Fidelity did not receive timely notice of Becker’s accident of July 29, 1963 and of Becker’s claim and lawsuit against Moore as required under the condition of the garage liability policy issued by defendant Fidelity to S & W, Moore’s employer.
Upon the trial of this action the court found that the following facts were established by the evidence adduced before it:
a. On July 29, 1963 an accident occurred on Parsons Boulevard at or near its intersection with the Grand Central Parkway overpass, in the County of Queens, City and State of New York.
b. One August Becker, an employee of Dilbert’s Quality Supermarkets, Inc., was injured in said accident and he thereafter caused a summons and complaint to be issued in an action in the Supreme Court, Nassau County, entitled “ August Becker, plaintiff, v. D & D Truck Rental Corporation and William Moore, defendants.”
c. In said action, now pending in Nassau County, Becker alleged he was injured by virtue of the negligence of the named defendants arising out of the operation of two tractor trailer units owned by D & D, one of which was operated by William Moore.
d. That a copy of the summons and complaint in the Becker action was served on Moore on or about September 2, 1964 and by him was turned over to Cosmopolitan on or about September 11, 1964.
e. That Moore was an employee of S & W at all times prior and subsequent to July 29, 1963 and the work performed by *1014 Moore as an employee of S & W was billed by S & W to D & D as per plaintiff’s Exhibit 8 in evidence.
f. D & D had .no employees at any time during all the times relevant to the instant actions.
g. Cosmopolitan, through its attorney, appeared in behalf of D & D and Moore in the Becker action, and has not disclaimed as against either D & D or Moore.
h. At the time the accident happened, D & D was covered by an automobile liability insurance policy issued by Cosmopolitan, and iS & W was covered by a garage liability policy issued by Fidelity.
The policy issued by Cosmopolitan to D & D bore an indorsement dated May 1,1963, which contained two specific exclusions, among others, as follows:
“ The insurance with respect to any person or organization other than the Named Insured, Additional Insured and Lessee does not apply:
‘ ‘ (A) to any person or organization with respect to any loss against which there is other valid and collectible insurance * * *
“ (C) To any person or organization or to any agent, officer or employee thereof, operating an automobile repair shop, public garage, sales agency, service station or public parking place, with respect to any accident arising out of the operation of such business and/or to the ownership, operation, maintenance, and/or use of any automobile in connection therewith ’ ’.
The said exclusions in the-indorsement were, in addition to the standard exclusions, contained in paragraph V(d)2 of Exhibit 6 as follows: “ This insuring agreement does not apply: (2) to any accident arising out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place ”.
The policy of insurance issued by Fidelity to S & W entitled “Garage Liability Policy” specifically included garage operations under the coverage as f ollows:
‘ ‘ GARAGE OPERATIONS HAZARD
‘1 The ownership, maintenance or use of the premises for the purposes of a garage, and all operations necessary or incidental thereto, hereinafter called ‘ garage operations ’.
‘ ‘ AUTOMOBILE HAZARDS
‘ ‘ 1. ALL AUTOMOBILES
“ (a) The ownership, maintenance or use of any automobile for the purpose of garage operations, and the occasional use *1015 for other business purposes and the use for non-business purposes of any automobile owned by or in charge of the named insured and used principally in garage operations, and * * *
4 4 2. automobiles not owned on hibed. The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured, a partner therein or a member of the same household as any such person.”
And, as persons insured under said policy, included the following:
4 4 3. With respect to the Automobile Hazard:
44 (a) any person while using, with the permission of the named insured, an automobile to which the insurance applies under paragraph 1(a) or 2 of the Automobile Hazards, provided such person’s actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission,
''(b) any person while using an automobile to which the insurance applies under paragraph 1(b) of the Automobile Hazards with the permission of the person or organization to whom such automobile is furnished, provided such person’s actual operation or (if he is not operating) his other actual use thereof is within the scope of such permission ”.
The defendant was requested to give coverage under its policy to plaintiff in a letter dated July 27, 1965. Although Fidelity did not give coverage to Moore, it did not disclaim such coverage from the time of the receipt of said letter to the date of trial. Plamtiff never received any letter of disclaimer from Fidelity.
It appeared that since Fidelity did not undertake to defend Moore in the Becker action, Moore, at the request of an attorney for Cosmopolitan, commenced the action at bar because he and his employer, Mr. Davis, 4 4 condescended to do it fearing the fact that possibly what he had told me was true and if Mr. Moore did not sign it [the complaint], he would not be defended in the action ’ ’.
It also appears that the attorney for Cosmopolitan caused a third-party action to be commenced against S & W on or about April 14, 1965, and Fidelity appeared in that action on behalf of the third-party defendant, S & W, on or about July 14, 1965 by its attorneys.
In 1963, Sol Davis was an officer of S & W, 350 St. Nicholas Corporation, S. D. Garage, Inc. and 336 St. Nicholas Corporation and he was the active business manager of these four corporations. The stock in each of said four corporations was owmed by him and his wife and, at some point of time, his sons also became owners in part.
*1016 The 350 St. Nicholas Corporation and 336 St. Nicholas Corporation were real estate corporations. The business of S. D. Garage, Inc. had at least one employee, Anthony Corso, and was not developed. S & W had an automobile dealership and service station and 14 employees.
D & D also did business from 350 St. Nicholas Avenue, Queens and its stock was owned 50% by Sol Davis, 25% by Sam Dilbert and 25% by Arthur Dilbert. Its business was truck rental and Dilberts Quality Supermarkets was among its customers, but it had other customers also.
The truck lending agreement between D & D and Dilberts Quality Supermarkets provided in part: “3. The lessor shall promptly repair the vehicle (s) after receipt of notice by it that the same has become disabled. If the lessor deems it impractical to promptly make such repairs * * # then, the lessor shall furnish in place thereof another vehicle of substantially equivalent carrying capacity, so that the service hereunder shall commence and continue without unreasonable delay ”. Exhibit A was the standard D & D truck rental agreement. D & D has no separate payroll of employees. The testimony was that William Moore was designated to take care of all D & D servicing and repairing breakdowns, and it was his obligation to take care of the needs of D & D when it came to that type of situation; that was 98% of his duty. A billing for his services is rendered to D & D by S & W.
Fidelity’s policy issued to S & W contained the provision requiring the insured to give timely notice to the insurer of the occurrence of an accident, claim or suit. The accident to Becker allegedly happened while he and Moore were engaged in an effort to disconnect the disabled tractor from the trailer. The accident falls squarely within the ambit of the coverage provided under Fidelity’s policy.
This court finds it is clear from the language of the policy and the intention of the parties that inter alia it was the purpose of Fidelity, in issuing the policy and its insured in paying the premiums therefor that coverage be afforded to employees of Fidelity’s assured while operating vehicles owned by other persons. (See “ Persons insured ”, par. (3) a and b, quoted above and paragraph 2 under “Automobile Hazards” which reads: “ 2. The use in connection with garage operations of any automobile which is neither owned nor hired by the named insured” [emphasis supplied].)
In the leading case of Phoenix Ins. Co. v. Guthiel (2 N Y 2d 584, 589) the Court of Appeals, in discussing just such a policy, stated: “ A garage liability policy by its terms and purposes is *1017 intended to cover the use of cars owned by persons other than the dealer ’ ’.
Judge Froessel, speaking for the Court of Appeals in Switzer v. Merchants Mut. Cas. Co. (2 N Y 2d 575, 579) stated:
“ The dealer was covered by a garage liability policy which insured against liability for damages because of bodily injury including death arising out of the following 1 Hazards ’: ‘ The ownership * * * or use of the premises for the purpose of an emtomobile dealer * * * and all operations necessary or incidental thereto; and the ownership # * * or use of any automobile in connection with the above defined, operations ’. (Emphasis supplied.) An ‘ insured ’ was defined by a standard omnibus clause as the named insured and ‘ any person while using an automobile covered by tlvis policy, and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. ’ (Emphasis supplied.)
“ The insurer may thus be held responsible for Aldrich’s liability for injuries resulting from the use of the truck if such use falls within both the above-quoted clauses, i.e., it must have been within the above-defined ‘ Hazards ’ and with the ‘ permission ’ of the dealer-insured. Among the ‘ Hazards ’ defined by the policy are the ‘use of any automobile in connection with ’ the dealer’s ‘ defined operations ’, which expressly included those of ‘ an automobile dealer ’ * * * and all operations necessary or incidental thereto. (Emphasis supplied.) Clearly, by this express language, the automobile covered need not be owned by the dealer (see Abrams v. Maryland Cas. Co., 300 N. Y. 80, 85); all that is required is that it be used, and not necessarily by him in connection with his ‘ defined operations ’.”
In the light of the plain language of the policy issued by Fidelity and the authorities above quoted, this court is of the opinion that the defendant should be directed to appear on behalf of Moore and pay any judgment which may be rendered against him in the action by Becker now pending in the Supreme Court, Nassau County.
It is also apparent that the accident of July 29, 1963 is specifically excluded from the coverage provided under the policy issued by Cosmopolitan, since it (the accident) arose “ out of the operation of an automobile sales agency, repair shop, service station, storage garage or public parking place ”.
Subdivision 8 of section 167 of the Insurance Law provides : “ If under a liability policy delivered or issued for delivery in this state, an insurer shall disclaim liability or deny coverage *1018 for death or bodily injury arising out of a motor vehicle accident occurring within this state, it shall give written notice as soon as is reasonably possible of such disclaimer of liability for denial of coverage to the insured and the insured person or any other claimant (Emphasis supplied.)
In the case at bar, defendant was apprised of Moore’s desire to be given coverage under its garage liability policy in the letter dated July 27, 1965. From July 27, 1965 to April 5, 1967, the date of the trial herein, the defendant had not disclaimed coverage. Thus it is evident that defendant has failed to comply with subdivision 8 of section 167 of the Insurance Law.
The Appellate Division, Second Department, in the case of Appell v. Liberty Mut. Ins. Co. (22 A D 2d 906) stated: “ There is another substantial ground for holding the defendant Liberty liable to the plaintiffs in this action. When a claim is asserted under the statute (Insurance Law, § 167) against an insurer, the insurer, if it does not intend to honor the claim, is duty bound to disclaim as soon as reasonably possible. Upon the facts here, we find that Liberty, the insurer, failed to give such timely notice of disclaimer, in that it unreasonably delayed in giving such notice for two months after its receipt of a copy of the summons and complaint which the plaintiffs had served upon its assured, the MeConneys. Such unreasonable delay on the part of the insurer in disclaiming prejudiced the plaintiffs and is sufficient to estop the insurer from now asserting its nonliability under the statute. (Merchant Mut. Cas. Co. v. Wildman, 21 Misc 2d 1073, affd. 12 A D 2d 644, affd. 9 N Y 2d 985). The prejudice to the plaintiffs arose from the fact that in reliance upon Liberty’s failure to make a timely disclaimer of its liability, the plaintiffs proceeded with the labor and expense of prosecuting their unfruitful action against the MeConneys, Liberty’s assured. (Cf. Brink v. Hanover Fire Ins. Co., 80 N. Y. 108, supra.) ” (Emphasis supplied.)
The evident thrust of defendant’s contention is directed in attempting to prove that either Cosmopolitan has no rights or has waived its rights. However, it is the plaintiff, Moore, who is seeking to assert his rights as against the defendant without reference to his rights, if any, as against Cosmopolitan. Significantly, Cosmopolitan is not a party to the casé at bar, nor can its .rights be disposed of herein.
The court is satisfied that it ivas the intention of the policy issued by Cosmopolitan to D <& D to cover the latter’s trucks while operating as such, but there was no intention that the policy cover any repair or garage operations which were specifically excluded. On the other hand, Fidelity’s policy was *1019 intended to cover 8 \<& W in its garage and repair operations. And there can he no dispute that the accident to Becker occurred in the course of a garage and/or repair operation.
Every record accepted into evidence and all the testimony adduced upon this trial clearly established that Moore was an employee of S & W for all purposes and on its payroll. Defendant’s vague attempt to assert that Moore was an employee of D & D has not a shred of evidence to support it.
Defendant’s contention that since it represents S & W as a third-party defendant in the Becker action, Moore’s rights are amply protected is without merit. Since it is entirely possible that the third-party action of D & D against S & W may be dismissed by the court, or a verdict may be found by the jury in favor of S & W as against D & D, then S & W and the defendant would be out of the case, but Moore tvould still be a primary defendant without representation or protection from the defendant. Thus Moore would be grievously prejudiced by reason of defendant’s failure to defend him in the Becker case.
The defendant has cited the case of Jarka Corp. v. American Fid. & Gas. Co. (19 A D 2d 141, affd. 14 N Y 2d 714) as an' authority supporting its contention that plaintiff’s notice is not timely. An examination of that case discloses, however, that it is an authority in favor of the plaintiff in the ease at bar. It is obvious from the Jarka case (supra) that Moore, like the employee Dos Santos in the Jarka case, had rights which were greater than that of his employer, S & W, and that he was and is only required to give notice at such time as he becomes aware of his rights under the policy of insurance. Greaves v. Public Serv. Mut. Ins. Co. (4 A D 2d 609, affd. 5 N Y 2d 120), quoted by the court in the Jarka case {supra), makes it eminently clear that this is the law.
In Greaves the court discussed and approved “ the doctrine of separability ’ ’ as between the rights of the employer as the assured and the rights of an employee as “ the additional insured ’ ’. Defendant in the Greaves case maintained that the additional insured could have no greater rights than the insured party. The court rejected that contention on the authority of Morgan v. Greater New York Taxpayers Mut. Ins. Assn. (305 N. Y. 243).
Since Moore, in the case at bar, gave notice to the defendant as soon as he was alerted to the contract coverage, his notice to the defendant was timely on the authority of the Jarka and Greaves cases (supra).
From the fair preponderance of the credible evidence adduced upon this trial in support of the plaintiff’s claim herein, and in *1020 the light of the foregoing authorities, this court finds and determines that the defendant Fidelity is obligated to defend plaintiff herein in the action by Becker, now pending in the Supreme Court, Nassau County, and that the said defendant Fidelity is obligated to pay the amount of any judgment which may be rendered against William Moore in said action by Becker, up to the limit of liability under the policy issued by Fidelity to S & W.
The foregoing constitutes the findings of fact and conclusions of law by the court. Counsel for the respective parties may see the Clerk for their respective exhibits.
Plaintiff, William Moore, is hereby awarded judgment against the defendant, Fidelity & Casualty Company of New York, declaring that said defendant, Fidelity & Casualty Company of New York, is obligated and directed to defend said William Moore in the action now pending in the Supreme Court, Nassau County, wherein August Becker is plaintiff and D & D Truck Rental Corp. and William Moore are defendants, and that defendant, Fidelity & Casualty Company of New York is obligated, and directed to pay the amount of any judgment which may be rendered against said William Moore, as a defendant in said action, up to the limit of liability provided by the insurance policy issued by defendant, Fidelity & Casualty Company of New York, to S & W Sales Co., Inc.